THE FARMERS' BANK OF MISSOURI, Respondent, *v.* BAYLESS, HUDGENS *et als.*, Appellants.

*Partnership—Action—Note.*—Where one of several partners executes a note in his own name for money borrowed, no action upon the note can be maintained against the other partners, although the money may have been borrowed for the firm, and applied to partnership purposes.

*Error to Ray Circuit Court.*

*Hall* and *A. H. Vories*, for appellants.

I. The note sued on in this case having been executed to the plaintiff by James F. Hudgens and Henry C. Garner in their individual names, and not in the partnership name of Wm. Hudgens & Co., (of which partnership defendants Bayless and Wm. Hudgens were members,) the same was not the note of, nor binding upon, said Bayless and Wm. Hudgens, and it makes no difference that the money for which said note was discounted was applied to the uses of said firm. (See Stor. on Part. § 134 to 142, § 102; Jaques v. Marquand, 6 Cow. 497; 3 Kent's Com. 41-4; 8 Pick. 411; 9 Mass. 119 to 121.)

II. Where one partner borrows money and gives his own security only for it, it does not become a partnership debt by being applied to partnership purposes with the knowledge of the other partners; the character of the debt is to be determined by the security given. (Gow. on Part. 154, and supplement to same, 43; Coll. on Part., 426 and following.)

III. The evidence in this case shows that the plaintiff had an account against the partnership firm of Wm. Hudgens & Co., and also against said James F. Hudgens, and that they were acquainted with the firm name of Wm. Hudgens & Co., which is conclusive evidence that the credit in the cause under consideration was given to James F. Hudgens and not to the said firm.

IV. The evidence shows that at the time of the execution of the note sued on, the firm of Wm. Hudgens & Co. had for some time been dissolved, and that at said time there

was no firm in existence composed of Wm. Hudgens, James F. Hudgens, and Thomas H. Bayless; wherefore said James F. Hudgens could not bind the other individuals who had been members of said firm by any note executed by him, either in his own name, or in the partnership name, or any other name, unless he had special authority so to do, (which is not pretended,) and the court ought to have so instructed the jury.

V. This suit is brought upon the promissory note named in the petition, in which it is alleged that the defendants executed the note by a certain description. If the plaintiff recovers, it must be on the ground that the contract or the note was binding upon all of the defendants against whom judgment is rendered, and it will be seen that the judgment of the court below was given upon the supposition that the note was the note of each and all of the said defendants. Wherefore it will not do for the plaintiff now to claim a right to recover upon the original consideration for which the note was given, and thus abandon the case made in his petition; and in fact if he had such case before the court, it is believed that the law would still be against him. (See authorities above cited; Stor. on Ag. § 147, 155 and 161.)

*Ryland & Son* and *C. F. Garner*, for respondent.

I. The note was properly admitted as evidence on the trial of this case, subject to be afterwards excluded according as the proof should warrant.

II. The note sued on is not the debt, it is but the evidence of debt. The note may by accident be burnt or destroyed, the debt still remains. (Woodward v. Winship et al., 12 Pick. 430; Virral v. Burrill, 16 Pick. 406.) As to confessions of one partner after the dissolution—Adiamo v. Maxey et als., 15 Mo. 39; Church v. Sparrow & Goodsell, 5 Wend. 223; Bank of Rochester v. Monteath et al., 1 Denio, 402; Richardson v. French, 4 Met. 579; Cole v. Sackett, 1 Hill R., 516; Shirley v. Jamson & Mandeville, 6 Cranch, 253; Swan v. Steel et al., 7 East. 210; Smith v. Craven, 1

Cramp. & Jer. 500; Brown v. Gibbins, 5 Bro. P. C. 491; Gardiner v. Childs, 8 Car. & P. 345; 1 Pars. Cont., § 11, p. 149–50; Stor. Part., § 138, 139, 142; Græffers v. Hetchman, 5 Watts, 454; Coll. on Part., 430, § 478, n.; Sandeland v. Marsh, 2 Barn. & Al. 673.

III. From the whole evidence in the case it appears plainly that the money was borrowed for the firm of Wm. Hudgens & Co., was used by the firm in their business, and the firm must have known that it was so borrowed and used, and that James F. Hudgens was in this business the agent of the firm; that the note originally given, and each renewal, was given and made with the knowledge of Bayless and Wm. Hudgens.

IV. There is no evidence to show that, at the time the money in the case was borrowed, the plaintiff had an account or any transaction with the firm of William Hudgens & Co. The renewal notes must be considered evidences of the original debt.

BAY, Judge, delivered the opinion of the court.

The Farmers' Bank of Missouri brought suit in the Ray Circuit Court against John W. Shotwell, Adm'r of the estate of James F. Hudgens, dec'd, William Hudgens, Thomas H. Bayless, Henry C. Garner, George H. Stewart, and Thomas L. Shaw, upon a negotiable promissory note, of which the following is a copy: " $3,700.—Lexington, Mo., December 25th, 1862. Six months after date, we promise to pay to the order of G. H. Stewart thirty-seven hundred dollars, for value received, negotiable and payable, without defalcation or discount, at the Farmers' Bank of Missouri. James F. Hudgens, H. C. Garner." Upon the back of which were endorsed the names of G. H. Stewart; Thomas L. Shaw. The petition alleges that James F. Hudgens, in his lifetime, with defendants William Hudgens and Thomas H. Bayless, by the name and description of James F. Hudgens and Henry C. Garner, by their negotiable promissory note dated as aforesaid, promised, for value received, to pay to the order

of the said Stewart thirty-seven hundred dollars, negotiable and payable, without defalcation or discount, at the Farmers' Bank of Missouri ; that said Stewart, for value, transferred by endorsement and delivered said note to said Shaw, who afterwards transferred by endorsement and delivered the same to the plaintiff, who is the legal owner and holder thereof. It is also averred in said petition that said note was given in renewal of a note originally discounted at said bank for the use and benefit of the firm of Wm. Hudgens & Co.—a firm composed of Wm. Hudgens, James F. Hudgens, and Thomas H. Bayless, and that said firm received, and used in their firm business, the proceeds of said original note, which was renewed from time to time for the benefit of said firm.

The petition further states that Wm. Hudgens and Thomas H. Bayless are surviving members of the firm of Wm. Hudgens & Co., and that Thomas H. Bayless, as surviving partner, is administering the partnership effects of Wm. Hudgens & Co., and that John W. Shotwell is the administrator of the estate of James F. Hudgens, dec'd.

The suit was instituted by summons, but afterwards an attachment issued in aid thereof. The defendants Wm. Hudgens and Thos. H. Bayless appeared and answered, and a default was taken as to the other defendants with the exception of Shotwell, and as to him the suit was dismissed.

The answer of Wm. Hudgens and Thomas H. Bayless is, substantially, a plea of *non est factum*. They deny that they, together with the said James F. Hudgens, in his life time, made the note in question ; and they deny that, together with the said James F. Hudgens, by the name and description of James F. Hudgens, they promised by said note to pay to the order of said Stewart the sum mentioned in said petition ; and they deny that, by any name or description whatever, they, or either of them, ever executed the note sued on ; the answer also denies that said note was given in renewal of a former note discounted at said bank for the use and benefit of said firm of Wm. Hudgens & Co., or that the

proceeds of said alleged original note were used in the business of said firm.

By consent of parties the cause was tried by the court sitting as a jury.

To maintain the issue on the part of the plaintiff, evidence was offered tending to prove that the note in controversy was given in renewal of a former note as stated in the petition. Daniels, a witness on the part of the plaintiff, stated that he was a clerk in the bank, though not at the time of the discount of the original note ; that shortly after the death of James F. Hudgens, which took place in the latter part of 1862, Bayless and Shotwell came to the bank at Lexington, and Bayless requested witness to show him the indebtedness to the bank of James F. Hudgens, and also the firm of Wm. Hudgens & Co.; witness showed Bayless the books containing the same ; didn't know that Bayless saw all the entries of the notes or not, but he had an opportunity of doing so ; Bayless wanted to know if the notes could be renewed ; witness replied that he presumed they could by paying calls. Witness further stated that from memorandums taken from the books as they appeared when Bayless was there, the notes on the books from both James F. Hudgens and Wm. Hudgens & Co. were as follows, to-wit : James Hudgens' note for $3,700, discounted originally January 27, 1858, made by James F. Hudgens, James Iler, and C. P. Reeves, and endorsed by Joseph Chew and A. K. Reyburn, which note had been renewed from time to time until January 28, 1863, when it was renewed by Bayless in the name of Wm. Hudgens & Co.; also another note of James F. Hudgens for $1,700, discounted March 2, 1859, made by James F. Hudgens, Joseph Chew, and C. P. Reeves, and endorsed by A. B. Conrow, renewed from time to time until after the death of Hudgens, when it was renewed by Bayless in the name of Wm. Hudgens & Co.

The notes of Wm. Hudgens & Co. were as follows : One discounted May 2, 1861, for $772.14, made by Wm. Hudgens & Co., A. H. Conrow, and C. P. Reeves, and endorsed

by C. T. Garner; another note for $750.61, discounted the same day, and made by Wm. Hudgens & Co., A. H. Conrow, and C. P. Reeves, and endorsed by C. T. Garner, both of which were renewed from time to time in the name of Wm. Hudgens & Co., and have since been paid.

Neither of the notes originally discounted in the name of James F. Hudgens, or any renewal of the same, had upon them the names of Wm. Hudgens & Co., or any member of said firm, except James F. Hudgens, until after the death of the said James F. Hudgens, when the $1,800 and $1,700 notes were renewed by Bayless in the name of Wm. Hudgens & Co.

It was admitted by defendants that the firm of Wm. Hudgens & Co. was composed of James F. Hudgens, William Hudgens, and Thomas H. Bayless.

Shotwell, administrator of Hudgens, was also introduced as a witness, and stated that in several conversations had with Bayless, he (Bayless) told him that the stock in the bank in the name of James F. Hudgens belonged to the firm of Wm. Hudgens & Co., and that the notes due the bank, executed by James F. Hudgens in his individual name, upon which he was neither endorser nor security, were for the benefit of the firm of Wm. Hudgens & Co., and were their debts, and that said firm had the benefit of the proceeds of said notes; Bayless further told witness that he would pay the notes, and that witness, as administrator of Hudgens, need give himself no further concern about them; in March, 1863, witness, by order of the probate court of Ray county, transferred the bank stock, amounting to $2,700, to Wm. Hudgens & Co.; the reason Bayless gave why the notes were made in the name of James F. Hudgens alone, was that said Hudgens was a director in the said bank, and, as such, could get the money on better terms and for a longer time than it could be obtained in the name of the firm.

The books of Wm. Hudgens & Co. were then introduced, from which it appeared that the proceeds of the note in controversy were applied to the use and benefit of the firm of

Wm. Hudgens & Co., and that the interest on the renewed note was paid out of the funds of said firm. Other testimony was introduced by plaintiff, tending to show that the proceeds of the note sued on, as well as other notes executed in the name of James F. Hudgens and discounted at the bank, were applied to the use and benefit of Wm. Hudgens & Co.

It was shown on the part of the defendants that in January, 1859, the firm of Wm. Hudgens & Co. sold out to McGee & Demasters, who continued the business about a year and then sold out to Wm. Hudgens & Co., who, in March, 1861, sold to Hudgens, Bayless & Co., a firm composed of James F. Hudgens, Thomas H. Bayless, and James A. Davis, said Davis taking the place of Wm. Hudgens. Other evidence was given in the cause, but it is not deemed of sufficient importance to set it out in this opinion.

Upon the part of the plaintiff the court made the following declarations of law :

1. If the note specified in the petition was executed by James F. Hudgens, dec'd, in renewal of a note, and the original note was executed by the said James F. Hudgens, dec'd, for the purpose of borrowing money for the use of the firm of Wm. Hudgens & Co., and that the sum of thirty-seven hundred dollars was so borrowed for the use of the firm, and was used by the firm of Wm. Hudgens & Co. in their firm business, the plaintiff is entitled to receive the money so borrowed for, and used by, the firm from the members of the said firm of Wm. Hudgens & Co., notwithstanding the note specified in the petition was signed by James F. Hudgens alone.

2. That the books of the firm of Wm. Hudgens & Co. showing that the sum of thirty-seven hundred dollars, so borrowed, was used by the firm, and that interest on the same was paid by the firm, is evidence against the members of the firm that the firm recognized it as a firm debt, and binds the firm for the payment thereof.

3. It is immaterial whether at the time the money was

borrowed the plaintiff knew that the firm of Wm. Hudgens & Co. were to receive and use the money, and be bound for the payment of the same, or not; the plaintiff is entitled to recover of the firm of Wm. Hudgens & Co., if they did so receive and use the money.

4. The admissions of a member of the firm after the dissolution of the partnership, are evidence against the member so making such admissions.

To the giving of all, except the last instruction, defendants objected and excepted.

The defendants then asked the court to declare the law as follows:

1. If the note sued on was executed by the said James F. Hudgens in his own individual name by the name of J. F. Hudgens, and was also executed by Henry C. Garner and endorsed by said defendant Stewart to said Thomas Shaw and by him to the plaintiff, then said note is the individual note of the said James F. Hudgens and the other parties thereto, and not the note of Bayless and Wm. Hudgens; and the court must find for said defendants (Bayless and said Wm. Hudgens), unless the court find from the evidence that at the time of the execution of said note a partnership existed between said Wm. Hudgens, Thomas H. Bayless, and said James F. Hudgens, under the name and firm of J. F. Hudgens, or unless the said note was so executed by the said Jas. F. Hudgens by the authority of the said defendants Bayless and Wm. Hudgens, or unless the execution thereof as aforesaid was afterwards ratified by said Bayless and said Wm. Hudgens.

2. The original note discounted by the plaintiff having been executed by the said James F. Hudgens in his individual name, and not in the name of Wm. Hudgens & Co., the credit was given by said plaintiff to said James F. Hudgens and to the other parties to said note, and not to the firm of Wm. Hudgens & Co.; and the notes given in renewal of said original note having in like manner been executed by the said James F. Hudgens in his individual name, the said

plaintiff cannot recover in this action against the said defendants Bayless and Wm. Hudgens even though the proceeds of said original note so discounted by plaintiff were applied to the use and benefit of the firm of Wm. Hudgens & Co., and though the interest on said notes was from time to time paid by said firm of Wm. Hudgens & Co., unless said original note or one of said notes so given in renewal was so executed by said Jas. F. Hudgens in his individual name by the authority of the said Bayless and said Wm. Hudgens, or there was a partnership existing between said Wm. Hudgens, Jas. F. Hudgens, and Thos. H. Bayless, under the name and firm of J. F. Hudgens, or unless the execution of said original note or one of the renewal notes was afterwards ratified or adopted by both said Wm. Hudgens and Thomas H. Bayless, and a promise made by said Thomas H. Bayless alone to a third person, not the agent of plaintiff, to pay said note sued on after its execution will not bind either said Bayless or said Wm. Hudgens in the present action.

3. The said original note so discounted by the plaintiff, and all notes given in renewal thereof, including the note sued on, having been executed by the said James F. Hudgens and in his individual name, and not in the name of the firm of Wm. Hudgens & Co., it devolves upon the plaintiff to prove that said notes, or one of them, were so executed by the said James F. Hudgens by the authority of said Bayless and Wm. Hudgens, or that the execution of said notes or one of them was ratified by both said Bayless and said Hudgens; and though the said Thomas H. Bayless, after the execution of said note sued on, may have promised a third person, not the agent of the plaintiff, to pay said note, such promise, not being in writing, is not binding on said Bayless, and in this action the plaintiff cannot recover against said Bayless.

4. The admissions of a partner in order to bind his copartner must be made during the existence of the partnership, and in relation to a matter within the scope of the partnership business; and in the absence of proof as to the

duration of the partnership of Wm. Hudgens & Co., the death of James F. Hudgens dissolved said partnership, and any admissions made by said Bayless after the death of the said James F. Hudgens was not binding on said firm of Wm. Hudgens & Co.

The court refused the first and second, and gave the third and fourth.

Judgment being given for the plaintiff, the defendants in due time filed their motion for a new trial, which being overruled exception was taken, and the case is brought here by appeal.

The theory of the court below, as shown in the instructions given in behalf of the plaintiff, is, that if the note in controversy was given for money borrowed for the use of the firm of Wm. Hudgens & Co., and was used in the business of the firm with the knowledge and consent of the firm, then the note sued on is the note of all the members of said firm, though executed in the individual name of one of the firm. This, in our opinion, is not the law of the case. Story, in his work on Partnerships, (sec. 134 & fol.,) holds that the law is well settled "that if money is borrowed, or goods bought, or any other contract is made by one partner upon his own exclusive credit, he alone is liable therefor, and the partnership, although the money, property or other contract is for their proper use and benefit or is applied thereto, will in no manner be liable therefor." The same rule is adopted in the French law, and Story quotes from Pothier, (1 Pothier, de Société, U. 101, 105, 106,) in which the author says that when a partner has not contracted in the name of the firm, but in his own name alone, he alone will be bound, although the contract has been applied to the benefit of the partnership. Thus, if a partner has borrowed money in his sole name for his own account, and then he applies the money to partnership purposes, the creditor cannot have any action against the firm, for, according to the principles of law, the creditor has his remedy only against the party with whom he has contracted and not against those who have

been benefitted and received profit from it. Emly v. Lye (15 East. R. 7) is not unlike the case at bar: One of two partners drew bills of exchange in his own name, which he procured to be discounted by a banker through the same agent who procured the discount of other bills, drawn in the partnership's name, with the same banker; it was held by the court "that the banker had no remedy against the firm, either upon the bills so drawn in his own name," or for money had and received through the medium of such bills, although the proceeds were carried to the partnership account. The reason was that the money was advanced solely on the security of the parties whose names were on the bills, by way of loan to them, and not by way of loan to the partnership, and it made no difference in the case that the banker conceived that all the bills were drawn on the partnership account since he did not credit the firm but "only the names on the bills."

The same doctrine is maintained by Collyer in his work on Partnership (p. 426), wherein he says: "If a person advance money to the firm and take the separate bill of one partner, he cannot sue the firm on that security, although he may possibly succeed in an action against the firm for money advanced." "On the bill the contract is several, and the individual partner alone can be sued upon it."

Again he says: "If a person advance money even for the purposes of a firm, but take the separate security of one partner, the partnership not being carried on in that partner's individual name, the contract, as evidenced by such security, is several, and a several action only can be brought on it."

And he cites the case of Siffkins v. Walker, reported in 2 Camp., 308, which was a suit on a promissory note for £300, executed by T. Walker and made payable to Siffkin or order. The declaration charged that the note was signed by Walker for himself and one Rowlestone, whereby they promised to pay, &c. It was contended by the plaintiff, and he undertook to show that the defendants were jointly in-

debted to the plaintiff on a charter-party of affreightment to the amount of £300, and that the note declared upon was given by Walker in satisfaction of this debt; but Lord Ellenborough held that the remedy of the plaintiff was either jointly against both defendants on the charter-party, or separately against Walker on the promissory note. And this view of the law is adopted by Chancellor Kent, who says: "If a note or bill be drawn, or other contract made, by one partner in his name only and without appearing to be on partnership account, or if one partner borrow money on his own security, the partnership is not bound by the signature, even though it was made for a partnership purpose or the money applied to a partnership use." (3 Kent, Com. 43.)

As far as we have been able to examine the American cases, we do not find any which contradicts this doctrine. But it has been ingeniously argued that if this rule is to prevail to the extent here contended for, it will overthrow the doctrine with reference to the liability of dormant and secret partners, as the credit could only be given to the ostensible partner, the others being unknown. But Kent answers this by saying that in such cases the law does not treat it as an exclusive credit, and founds its decision upon the ground that the creditor has had a choice or election of his debtor, which cannot be where the partner is dormant or unknown. The credit therefore is not deemed exclusive but binding upon all for whom the partner acts, if done in their business or for their benefit, as in cases of agency for an unknown principal. (3 Kent, 215, § 138.)

In the case under consideration, it is not contended that the appellants were doing business with James F. Hudgens under the name and style of James F. Hudgens, but on the contrary the proof shows that the name of the firm was Wm. Hudgens & Co.; that it was a well known firm and must have been so known to the bank, as several notes in the firm's name had been previously discounted. Nor is there any evidence in the case of any agreement or understanding

between the parties and the bank that the note in controversy was to be regarded and treated as a firm note, or that the credit was given to the firm. But there is testimony introduced by both plaintiff and defendants, showing that the note was executed by James F. Hudgens alone, for the reason that he was a director in the bank, and as such could obtain a discount for a longer time and on better terms than could be obtained on the firm's note, and this fact has an important bearing on the case, for it tends to show to whom the credit was given and upon whom the plaintiff relied for payment.

Upon a careful examination of the evidence as presented in the bill of exceptions, we are unable to find any proof showing that the defendants authorized James F. Hudgens to execute the note for them and in their behalf, though there is ample proof to show that the proceeds of the note were used by and went into the business of the firm, with the knowledge and consent of the defendants. Bayless admitted the fact and promised the administrator of Hudgens to take up the notes discounted by the plaintiff, in the individual name of the intestate, for the use of the firm, and did pay several of such notes, and the interest on all such notes was paid out of the funds of the firm. He treated the loan as a debt due from the firm, and in an action against those composing the firm, for money loaned, his admissions might be very important; but we are not treating the question of the liability of the firm for money borrowed, for the plaintiff has not thought proper to bring such a suit, but relies upon the note alone ; and the only question presented by the pleadings is whether the defendants executed the note, or authorized James F. Hudgens to execute the note for them in his individual name ; in other words, whether the note sued on is the note of defendants.

From the view we have taken of the law, it is apparent that the court below erred in the declarations of law given, for which reason the judgment will be reversed and the cause remanded ; Judge Dryden concurring.