JOHN V. WEBB, Appellant, v. JOHN E. LIGGETT ET AL., Respondents.

### December 17, 1878.

L. and D. entered into an agreement with G., by which they were to furnish the stock and tools and money necessary to cultivate five hundred acres of hemp; G. to superintend the lands and take charge of the crop as the agent of L. and D., and for so doing to have one-third of the profits; the stock on the farm to belong to L. and D., and the hemp to be shipped to their commission-merchant, who was to dispose of the same and pay to G. one-third of the net profits. D. leased lands in his own name for the purpose of carrying on the business of the farm, and, after running the farm for a year or two, failed. It was then sought to hold L. and D. liable for the rent of the farm as secret partners of G. *Held*, that the above agreement was no contract of partnership, and that, had L. and D. been partners of G., it would be necessary to show that the partnership extended to the lease, and that the partner contracting had power to bind his copartners in the matter of renting the farm.

APPEAL from St Louis Circuit Court.

*Affirmed.*

HUDGENS & DAVIS, for appellant: The court erred in permitting defendants, by their oral testimony, to vary or add to the written agreement of Graves with defendants by testifying to their understanding in regard to losses. — *Bruce, Admr.*, v. *Beck*, 43 Mo. 279 ; 1 Greenl. on Ev., sect. 275 ; *Burris* v. *Blair*, 61 Mo. 133 ; *Bigelow* v. *Collamore*, 5 Cush. 226. When two or more persons combine their property, labor, or skill, or one furnishes the capital and the other the labor, in the transaction of any lawful business for their *common profit*, such persons are partners. —

*Richardson* v. *Farmer*, 36 Mo. 35; *Thorp* v. *Marsh*, 40 Miss. 158; *Lengle* v. *Smith*, 48 Mo. 276; Story on Part., sect. 38 *et seq.;* Pars. on Part., side pp. 51, 70; 40 Ill. 406; 15 Ill. 31. If defendants entered plaintiff's farm under this secret agreement and the lease to Graves, and received the entire proceeds of the two years' renting, then they were liable as secret partners of Graves under said agreement, because they took from the plaintiff the fund which was a proper security for his rent. — *Lea* v. *Guice*, 13 Smed. & M. 656; *Richardson* v. *Farmer*, 36 Mo. 35; Story on Part., sects. 138, 159; *Grace* v. *Smith*, 2 Bl. R. 998; *Waugh* v. *Carver*, 1 Smith's Ld. Cas., pt. 2, p. 1174.

DAVIS & SMITH, for respondents: The agreement relied on by plaintiff as establishing a partnership between Graves and Liggett and Dausman did not of itself constitute them such partners; on the contrary, the agreement, by clear terms, constitutes Graves the superintendent and agent of Liggett and Dausman, receiving as a compensation a share of the profits, and Graves's share of the profits was merely a mode of paying him for his services. — *Hazard* v. *Hazard*, 1 Story, 371; *Wilkinson* v. *Frazer*, 4 Esp. 182; *Mann* v. *Glennell*, 4 Mau. & Sel. 240; *Geddes* v. *Wallace*, 2 Bli. 270; *Baxter* v. *Rodman*, 3 Pick. 435; *Ross* v. *Drinker*, 2 Hall, 415; *Allen* v. *Dunn*, 15 Me. 292; *McArthur* v. *Ladd*, 5 Ohio, 431; *Motley* v. *Jones*, 2 Ind. 144; *Kellogg* v. *Griswold*, 12 Vt. 291; *Stearns* v. *Haven*, 16 Vt. 87; *Mason* v. *Potter*, 26 Vt. 722; *Norment* v. *Hull*, 1 Humph. 320; *Bull* v. *Schuberth*, 2 Md. 38; *Wilkinson* v. *Jett*, 7 Leigh, 115; *Patten* v. *Moses*, 1 R. I. 430; *Natling* v. *Colt*, 2 Halst. Ch. 539; *Price* v. *Alexander*, 2 Greene (Iowa), 427; *Goode* v. *McCartney*, 10 Texas, 183; *Wiggins* v. *Graham*, 51 Mo. 17; *Campbell* v. *Dent*, 54 Mo. 325; *Lucas* v. *Cole*, 57 Mo. 143. The fact that Graves was exempt from the losses of the adventure is a circumstance which, though not conclusive, strongly tends to show that no partnership was intended, and confirms the view that the words " clear

profit" and "net profit," occurring in the agreement, simply refer to the measure of Graves's compensation for superintending the raising of hemp as the "agent" of these defendants, and did not refer to "profits" as in ordinary partnership; and the real inquiry is, Did the parties intend a partnership or not?— *Felichy* v. *Hamilton*, 1 Wash. C. Ct. 491; *Putnam* v. *Wise*, 1 Hill, 239; *Burckle* v. *Eckart*, 1 Denio, 341, 342; *Ambler* v. *Bradley*, 6 Vt. 119; *Bowman* v. *Bartley*, 10 Vt. 170; *Buckingham* v. *Barnum*, 15 Conn. 72; *Churchman* v. *Smith*, 6 Wheat. 148, 149; *Lowry* v. *Brooks*, 2 McCord, 422; *Simpson* v. *Feltz*, 1 McCord Ch. 218, 219; *Beecham* v. *Dodd*, 3 Harr. 485; *Pollard* v. *Stanton*, 7 Ala. 761; *Emanuel* v. *Draughn*, 14 Ala. 306; *Buckner* v. *Lee*, 8 Geo. 288; *Wood* v. *Valette*, 7 Ohio St. 172; *Vanderburgh* v. *Hull*, 20 Wend. 71; *Bailey* v. *Clark*, 6 Mass. 374; *Rawlinson* v. *Clarke*, 15 Mee. & W. 300; *Beecham* v. *Dodd*, 3 Harr. 484; *Merwin* v. *Playford*, 3 Robt. 703. A partnership will be bound by deed executed by one partner on his behalf, provided the act of such partner have from his copartner either a previous parol authority or a subsequent parol ratification. — *Bentzen* v. *Zierlein*, 4 Mo. 417; *Gwin* v. *Rooker*, 24 Mo. 290. Where one partner borrows money on his own credit, and puts it into the firm as his contribution to the joint fund, the other members of the firm are not liable for the money so borrowed. — *Saville* v. *Robertson*, 4 Term Rep. 720; *Smith* v. *Craven*, 1 Cromp. & J. 500; *Post* v. *Kimberly*, 9 Johns. 470; *Farmers' Bank* v. *Bayliss*, 35 Mo. 428; 41 Mo. 274.

HAYDEN, J., delivered the opinion of the court.

This is an action brought to charge the defendants as partners of one Graves. On the 7th of April, 1866, the defendants made the following agreement with Graves: "This agreement, made and entered into this the 7th day of April, A. D. 1866, by and between John E. Liggett and Henry Dausman, of the city and county of St. Louis, the

parties of the first part, and Stanford Graves, of the county of St. Louis, Mo., the party of the second part, witnesseth : That the parties of the first part agree to furnish the mules, horses, wagons, plows, harness, and funds necessary to cultivate five hundred acres or more in hemp, in the county of Lafayette. The said Stanford Graves is to superintend and control said lands and to take charge of said hemp-crop as the agent of said Liggett and Dausman ; and for so doing is to have one-third of the clear profits of said hemp-crop. The horses, mules, cattle, wagons, harness, and all the agricultural implements to be the property of the said Liggett and Dausman, and the hemp, when ready for market, to be shipped to the said Liggett and Dausman, or any commission-merchant they may name at St. Louis, who are to dispose of the same, and to pay over one-third of the net profits of said crop to said Stanford Graves. As witness our hands and seals the day and date aforesaid.'' A few days after the execution of this agreement, Graves, by a written lease given in evidence, the parties to which were the plaintiff as lessor and Graves as lessee, hired six hundred acres of land in Lafayette County, Missouri, at $3 an acre for the land to be put in hemp, and $2.50 an acre for the land which might be put in corn, for one year, Graves agreeing to pay rent only for the land which should be cultivated. There was a second and similar lease from 1867 to 1868. There was evidence tending to show that Liggett and a son of Graves, in March or April, 1866, went upon the farm so hired, taking with them hands and tools to work the farm ; that Liggett bought mules and machinery, and paid all the expenses of cultivating the farm, young Graves being overseer ; that drafts were drawn upon the defendants, and by them paid, for all articles furnished. The crop of hemp raised during the first year was shipped to them in St. Louis ; and that of the second year was partly shipped to them, and partly sold by Liggett upon the premises. At the close of the second year the defendants sold the mules,

machinery, and farming utensils to Graves for $10,000, and took a deed of trust on the real estate of the latter to secure payment of the purchase-money. Graves then sold the property thus purchased, and became a bankrupt.

There was evidence tending to show that Graves requested his son to keep secret the above agreement with the defendants; that Graves made statements in regard to his relations with defendants tending to prove a partnership; that when the plaintiff failed to collect his rent from Graves, the defendants refused to pay it, denying any partnership. There was a demurrer to the evidence, which was overruled, and the defendants then testified to the effect that they furnished the means and implements under the agreement, and received the hemp; that at the close of the second year they sold out the property to Graves and received his deed of trust, as stated; that Graves became a bankrupt in 1872 or 1873, and left the State. The jury found for the defendants.

It is unnecessary to consider several questions which have been discussed, because we think it apparent that upon the whole evidence the plaintiff has not made out any case. The court below might properly have sustained the demurrer; but as it did not do so, the plaintiff is entitled to whatever benefit he can derive from the defendants' evidence. Such evidence, excluding all of that to which the plaintiff objected, does not, in a legal point of view, strengthen the plaintiff's case; and however great may be the hardship upon which the plaintiff insists, it is only the legal question which we have to consider.

The action is based upon the leases signed by Graves, and is to recover the rent reserved by the leases. It is contended that Graves was the secret partner of Liggett. Waiving the question whether the doctrine of the liability of dormant partners here applies, the case not being one of a mercantile partnership, it is not sufficient for the plaintiff to prove that Liggett was a secret partner of Graves, unless

it is shown that the partnership extended to the matter here involved, which is that of the leases and the hiring of the land. We have nothing to do with transactions prior to the making the agreement above given. The construction of that is a matter of law. Whether considered by itself or in the light of surrounding circumstances, it does not show that either Liggett or Dausman was a partner in the leases or in the matter of hiring the land. Upon the supposition that the defendants were to be partners with Graves, and that the word " agent " is either consistent with the partnership, or was put into the agreement to cover up the real transaction, and that the defendants were not to be known as partners of Graves, while all were to share as partners in the profits, yet there is nothing in the writing or in the parol evidence to show either any authority from the defendants to Graves to execute the leases, or that the matter of hiring the land was undertaken by the three persons or any two of them. Upon this point the writing is silent, and the defendants may have refused to be in any way concerned with the hiring of the land. It may have been the common agreement that, as they contributed funds, etc., so Graves, as his capital, should put in the leasehold. Even in the case of an incipient general partnership (and this was a special venture), one partner does not, by his contract with a person who has trusted him individually, bind his copartner merely because the means acquired by such contract are put as capital into the partnership business. Each partner may presume that his partner will obtain his share of means agreed to be contributed to the capital; but neither this expectation nor the fact that partnership articles have been signed will supply the want of proof of authority. Nor can one partner, whether secret or open, be bound because he has been benefited by goods or funds not acquired at his express or implied request. If here the partnership extended to the leases, the plaintiff has not shown it. Undoubtedly the use of the land was to be procured, and the

partnership may have extended to this matter ; but there is as to this an absence of evidence. The present is not like a case where the transaction is shown to be within the scope of the usual business of the partnership, like *Richardson* v. *Farmer*, 36 Mo. 35, relied on by the plaintiff. There Farmer was charged with being a copartner of Jopes, in whose name the notes sued upon were given. But the. evidence tended to prove not only that Farmer was interested in the business and shared the profits, but that the goods for which the notes were given were purchased in the usual course of the trade of the firm. There was evidence to show that Jopes acted for and by the authority of Farmer, and accordingly the rule is laid down : " The credit will not, therefore, be presumed to have been given on the sole and separate responsibility of the ostensible partner, but will bind *all for whom the partner acts*, if done in their business and for their benefit." *Richardson* v. *Farmer* is a case of secret partnership, and the distinction is there insisted upon between such a case and a known partnership where the creditor, having opportunity to select, gives credit to one partner because he chooses to do so. *Farmers' Bank* v. *Bayless*, 35 Mo. 428 ; 41 Mo. 274. But whether the partnership is secret or open, there must be evidence tending to show that the partner contracting had authority to bind his copartners in the transaction in question. As Baron Parke said in *Vere* v. *Ashby*, 10 Barn. & Cress. 297 : " The question is, with whom the plaintiffs contracted, and that depends on this : For whom was Rowland [the partner acting] authorized to make a contract? There is no question in this case as to an apparent authority as distinct from a real one. The only question is, therefore, by what persons was authority given to Rowland to contract. On the 24th of June the agreement for the partnership was made. The effect of that agreement is that Shaw [the secret partner] gives to Ashly and Rowland [the ostensible partners] respectively authority to use their names for the three in all dealings and

matters in respect of which partners in such a trade usually have authority to bind one another. If the name of the firm had been used in other transactions, out of the usual scope of dealing of such a partnership, the user of the name would not have bound Shaw.'' In the case at bar, the considerations thus expressed, which are vital where the effort is to hold a defendant as a dormant partner, are wholly ignored. The plaintiff's arguments are directed to prove a partnership, and that the agreement here imports a partnership ; but there is a total failure to bring home to the partnership the subject-matter of this suit. See *Smith* v. *Craven*, 1 Cromp. & J. 500 ; *Saville* v. *Robertson*, 4 Term Rep. 720 ; *Post* v. *Kimberly*, 9 Johns. *470.

The judgment must be affirmed. All the judges concur.